UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| AMANDA H.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:20cv378 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Social Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. § 423(d), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, supra at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant has not engaged in substantial gainful activity since July 13, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: fibromyalgia; obesity; major depressive disorder; generalized anxiety disorder; and panic disorder (20 CFR

2

       416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) subject to the following additional limitations: The claimant can frequently climb stairs or ramps, balance, stoop, kneel, crouch, or crawl. She can occasionally climb ladders, ropes or scaffolds. She must avoid concentrated exposure to fumes, dusts, odors, gases, poor ventilation, moving machinery, uneven terrain, and unprotected heights. She is able to perform work that can be learned in 30 days, or less, with simple routine tasks; routine work place changes; simple work related decisions; and she is able to remain on task in two-hour increments. With occasional interaction with coworkers and supervisors, and no interaction with the general public.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on September 29, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 13, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17- 28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied

3

review on August 26, 2020. This appeal followed.

Plaintiff filed her opening brief on August 4, 2021. On October 13, 2021, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on November 15, 2021. Upon full review of the record in this cause, this Court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

The pertinent medical evidence is as follows. Plaintiff presented to Parkview ER with complaints of shortness of breath and back pain on September 12, 2016. (Tr. 589). She reported that she had been walking around a store and her chest started hurting, and pain was sharp. *Id*. She was seen for cardiology related issues and was diagnosed with shortness of breath. (Tr. 594).

Plaintiff presented to Dr. Custodio Garrido at Parkview Health for a follow up and stress test on September 19, 2016. (Tr. 460). She also reported difficulty with walking due to pain in her

4

back and legs. *Id*. She reported that the pain is affecting her daily life and only feels relief when she is off her feet or laying down. *Id*. Upon examination, she displayed decreased range of motion and tenderness in her lumbar back and right wrist. *Id*. It was recommended she consider getting rheumatoid testing. (Tr. 461). Plaintiff presented to Parkview ER with feelings of anxiousness and fatigue on September 27, 2016. (Tr. 647). She reported that she had been recently diagnosed with lupus and was feeling anxious due to that diagnosis. *Id.* She was given Ativan and was told to follow up with a rheumatologist regarding her lupus. (Tr. 651).

Plaintiff presented to Dr. Hirenkumar Patel with complaints of joint pain on November 2, 2016. (Tr. 798) She reported the pain as chronic and affecting her neck, back, wrist, left elbow, bilateral shoulder, left and right hips, and right knee. *Id*. She reported that she feels the pain every day and is aggravated by activity. *Id*. Upon examination, she exhibited tenderness with her bilateral knees and hands, c-spine, lumbar spine, and all upper and lower extremity joints. *Id*. She was recommended to begin new medication to help with her pain. (Tr. 800).

Plaintiff presented to Dr. Patel on December 9, 2016, with complaints of chronic joint pain since she was young. (Tr. 812). She reported that it affects her neck, back, wrist, left elbow, bilateral shoulder, left and right hips, and right knee. *Id*. She reported that her pain is aggravated by activity and that she has stiffness in the morning. *Id*. She reported that she is currently taking Flexeril and Tylenol with little to no relief. *Id*. Upon examination, she exhibited tenderness in her bilateral knees and hands, c-spine, lumbar spine, and all upper and lower extremity joints. (Tr. 813). She was recommended to continue taking her medication and to try either gabapentin, Lyrica or Cymbalta. (Tr. 814).

Plaintiff presented to Parkview ER with complaints of left lower back pain on July 1, 2017. (Tr. 717) She reported the pain radiates to her abdomen and makes her feel nauseous. *Id*. She was

5

given new medication and was told to follow up with her family physician. (Tr. 721). Plaintiff presented to Parkview ER on July 17, 2017, with difficulty breathing and a panic attack. (Tr. 724). She had attempted to do some exercises and took Xanax, but neither helped. *Id*. She was released after close monitoring and it seemed the Xanax had begun to work. (Tr. 728).

Plaintiff presented to Dr. Patel on November 4, 2017, with complaints of chronic pain and arthralgias. (Tr. 825). She reported moderate pain affecting her neck and back, and that the pain was aggravated by activity. *Id*. Upon examination, it was noted she had bilateral hand and knee tenderness, c-spine tenderness, lumbar spine tenderness, and tenderness in her joints in her upper and lower extremities. *Id*. She was recommended to continue taking Lyrica. (Tr. 827).

Plaintiff presented to Otis R. Bowen Center for Human Services, Inc., on January 15, 2018. (Tr. 990). She reported that her emotions were all over the place and that she was dealing with a lot of stressors at home. *Id*. She reported that she continues to have panic attacks and also reported her anxiety is high. *Id*. She returned on February 20, 2018, for a follow up. (Tr. 991). She reported that she has a "fear of fear" and her social anxiety is high. *Id*. She was recommended to return in 2 weeks for a follow up. (Tr. 992).

Plaintiff presented to Parkview ER on January 25, 2018, with complaints of a panic attack, shaking, and visual field change. (Tr. 1414) She reported that she had a very busy day and felt shaky with some vision changes. *Id*. She also reported feeling tingly all over, but particularly in her hands. *Id*. She was diagnosed with a panic attack. (Tr. 1419).

Plaintiff presented to Otis R. Bowen Center on May 8, 2018. (Tr. 1708). She reported issues with melting down and not feeling strong or resilient. *Id*. She had moments of bizarre behavior, due to her rambling off topic and the clinician observed a panic attack. (Tr. 1708-1710). Plaintiff presented to Parkview ER on June 3, 2018, with complaints of leg pain. (Tr. 1542). She

reported bilateral thigh pain that was dull and radiating. *Id*. She reported that the pain was worse when laying down and that she felt somewhat better when standing. *Id*. She was discharged with a prescription for tramadol to help with the pain. (Tr. 1547).

Plaintiff presented to Dr. Garrido for a full physical exam on August 22, 2018. (Tr. 1652). She reported, amongst other concerns, that when she bends her neck down, she feels "electric shocks" all the way down to her feet. *Id*. She was recommended to continue regular exercise and practice safe injury prevention. (Tr. 1654).

At a follow up with Otis Bowen Center in June of 2018, clinicians set a goal for Plaintiff of limiting her panic attacks to less than four per week. (Tr. 1712). Plaintiff attended therapy at Otis Bowen through 2019. In October of the same year, Plaintiff's jobs skills coach, Susan Carter, completed a questionnaire. Ms. Carter indicated she had been working with Plaintiff 2-3 days a week for over two years. She indicated Plaintiff's therapists had diagnosed recurrent major depressive disorder, generalized anxiety disorder, agoraphobia, and panic disorder. (Tr. 1863). She opined Plaintiff had was "unable to meet competitive standards" in maintaining attention for two hour segments; performing at a consistent pace without an unreasonable number and length of rest periods; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; interacting appropriately with the general public; maintaining socially appropriate behavior; and traveling in an unfamiliar place. (Tr. 1865-1866). Ms. Carter concluded Plaintiff's mental health impairments would cause her to be absent from work more than four days per month. *Id*.

Plaintiff presented to Dr. Kashif Mufti on October 29, 2018, with complaints of fatigue and fibromyalgia. (Tr. 1685). She reported that she had pain, weakness and fatigue all over. *Id*. Her records were reviewed, and he opined that her symptoms were consistent with fibromyalgia. (Tr.

7

1687). He recommended she try Plaquenil and Prednisone, and to follow up for a re-check. (Tr. 1688).

Plaintiff presented to Dr. Dennis Uhrhammer for a primary care physician consult on February 27, 2019. (Tr. 1817). She reported chronic fatigue and chronic pain that travels through her system. *Id*. She also reported a history of panic attacks and anxiety. *Id*. He recommended she continue taking her medications and to follow up with her psychiatrist. (Tr. 1818). Plaintiff presented to Dr. Mufti on March 28, 2019, for a follow up appointment. (Tr. 1689). She reported that she was feeling worse, and had continuing problems in her neck, back, right shoulder, wrists, left shoulder, left hip and left knee. *Id*. She described the pain as burning and "pins and needles" feeling. *Id*. Examination demonstrated positive fibromyalgia tender points. (Tr. 1690). Dr. Mufti recommended she continue taking the Plaquenil, decrease the Prednisone, and add Flexeril and Gabapentin. (Tr. 1690).

Plaintiff presented to Otis R. Bowen Center on June 19, 2019, with issues of panic attacks and fear. (Tr. 1830). She underwent CPT and facilitated discussion to deal with uncontrollable stressors in her life. *Id*. She returned on August 15, 2019, to deal with her issues of fear and panic attacks. (Tr.1832). She underwent CBT to help increase stress management and the use of coping skills. *Id*.

Plaintiff attended a hearing on September 24, 2019 before ALJ Kathleen Winters in Fort Wayne, Indiana. Her attorney, Nick Lavella and a vocational witness, Mark Cheairs, were also present. Plaintiff testified that she saw a psychiatrist every three months, a therapist every two weeks, and her life skills coach two to three times per week. (Tr. 63). She reported issues going out in public, and difficulty breathing, sweating, shaking, and talking. (Tr. 64.) She reported that when she had bad days, she experienced difficulty getting out of bed and sometimes engaged in self

harm to feel better. (Tr. 67). She further reported that she had difficulty walking for longer than 10 minutes (Tr. 69). She explained her back hurt the worst when she is walking. (Tr.70).

The ALJ then questioned the vocational expert. The ALJ presented the RFC she assigned to Plaintiff to the vocational expert who testified such an individual could perform a significant number of jobs in the national economy. (Tr. 22, 79-87). The vocational witness likewise testified that a person could not be off task more than 20% of a workday, absent more than once per month, and explained that an ability to maintain concentration for two-hour periods of time was not commensurate with someone who has impaired sustained concentration. *Id*.

In support of remand, Plaintiff first argues that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff contends that, as a consequence of the ALJ's failure to properly consider the psychological expert opinions of the agency's reviewing doctors and Plaintiff's jobs coach, the ALJ failed to support her Step 5 decision that Plaintiff could perform a significant number of jobs in the national economy.

When concluding a claimant is not disabled at Step Five of a decision, an ALJ must support such a conclusion with testimony from an expert vocational witness, based on the Dictionary of Occupational Titles, which indicates the claimant, with all of their limitations, can still perform a significant number of jobs in the national economy. (*See* S.S.R. 0-04p). Because the Commissioner bears the burden of proof at Step Five, when questioning a vocational expert, an ALJ is required to orient the witness to the totality of a claimant's limitations. *O'Conner- Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Simila v. Astrue*, 573, F.3d 503, 520 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Young v. Barnhart*, 362, F.3d 995, 1003 (7th Cir. 2004). The hypothetical question to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d

9

329, 337 (7th Cir. 1994). A vocational expert must provide testimony which indicates a person capable of Plaintiff's RFC can perform a significant number of jobs in the national economy.

Plaintiff argues that the ALJ made multiple errors and omissions in evaluating expert opinion evidence and attempting to communicate Plaintiff's concentration-related and social limitations to the vocational expert. Specifically, Plaintiff contends that the ALJ committed reversible error when she failed to provide any logical explanation for her dismissal of the state agency psychologist's opinion of moderate limitations to Plaintiff's ability to "maintain attention and concentration for extended periods"; to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr.143-144, 161-162). Plaintiff further asserts that the ALJ failed to explain her departure from the psychologists' narrative opinions that Plaintiff could only "respond appropriately to brief supervision and interactions with coworkers and work situations." (Tr. 145, 163).

The Social Security Administration provides that its ALJs "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. §§ 405.1520(b) and 416.920. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p. The agency's regulations require an ALJ to consider the persuasiveness of a medical source opinion with consideration of several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, examiner status, and specialization. 20 C.F.R.

10

§§ 404.1520 (c), 416.920 (c). It is well-settled that to enable meaningful review an ALJ must build a logical and accurate bridge between evidence and conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The Seventh Circuit has stated that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled can be expected to cause a reviewing court to take notice and await a good explanation here for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014).

Here, the ALJ did not even mention in her decision that the state agency psychologists opined that Plaintiff would be prone, at least some of the time, to interruptions in her work-day or work-week which may have resulted in off task time and/or non-compliance with a normal work schedule. (Tr. 143-144, 161-162) Nor did the ALJ acknowledge the psychologists' opinions of a limitation to only "brief" interactions with coworkers and supervisors, instead limiting her to interactions on an "occasional" basis which Social Security defines as "up to 1/3 of an eight-hour workday" or more than two hours per day. (*See* S.S.R. 83-10) The ALJ also failed to offer "good explanation" for her departure from the agency doctors.

Plaintiff likens her case to the Seventh Circuit's decision in *DeCamp v. Berryhill*, in which remand was ordered because the ALJ omitted any discussion of the state agency psychologist's "check-box limitations" with regard to concentration-related and social impairments, both in his decision and in presenting hypothetical questions to the vocational expert. 916 F.3d 671, 676 (7th Cir. 2019).

Here, the ALJ concluded the state agency psychologists' overall opinions were "persuasive" and "consistent with the record." (Tr.25). However, she did not adopt any of the specific checkbox limitations or the narrative limitation of Plaintiff to only "brief" interactions with coworkers and supervisors and she failed to provide an explanation for her departure from

11

these opinions. The state agency psychologists opined far more restrictive and specific limitations which indicated an assessment that Plaintiff's psychological impairments would result in slowed work pace, lapses in concentration, additional breaks, and even absences from work. (Tr. 143-144, 161-162). While the ALJ purported to agree with the agency psychologists' assessments, she failed to even mention these specific checkbox opinions. Without any evidentiary support, the ALJ concluded Plaintiff could maintain adequate concentration without any interruption from her psychological symptoms over the course of an eight-hour work day in "two-hour increments". (Tr. 83-84).

The Commissioner argues that the ALJ's decision to limit Plaintiff to two-hour periods of concentration accounted for the agency psychologists' opinions that Plaintiff had "moderate" limitations in concentration. However, as the vocational expert explained, the normal workday only requires employees to concentrate for two-hour periods, and thus limiting Plaintiff to two-hour periods of concentration does not accommodate her moderate limitations. (Tr. 83-84); *DeCamp v. Berryhill*, ).916 F.3d 671, 676 (7th Cir. 2019). Thus, remand is warranted on this issue.

Plaintiff also argues that the ALJ erred in refusing to provide any substantive rationale for her rejection of the opinion of Plaintiff's long-time job skills coach, Susan Carter, who opined limitations similar to those of the reviewing psychologists. In her decision, the ALJ stated she did not have to provide even minimal reasoning for dismissing Ms. Carter's opinion because it was "inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c)" because Ms. Carter was not "an acceptable medical source (20 CFR 416.902)." (Tr. 26). While it is true that ALJs do not have to articulate how they "considered evidence from nonmedical sources" while using the same factors they do to consider a medical source, no part of this regulation suggests the ALJ can simply offer a conclusory opinion that evidence suggestive of disability is "inherently

12

neither valuable nor persuasive." Inherently valueless opinions are narrowly defined within the regulation the ALJ cited in this case, and simply being a non-medical source, as Ms. Carter was, does not fit any of the definitions. (*See* 20 CFR § 416.920b(c)(1)-(c)(3))

The Seventh Circuit has long held that ALJ's "may not simply ignore evidence," *Myles v. Astrue*, 582 F3d. 672, 676 (7th Cir. 2009), ignore "entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (internal citations omitted), or "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596, F.3d 419, 425 (7th Cir. 2010). Ms. Carter, who spent 2-3 days per week working with Plaintiff for two years, opined Plaintiff had no ability to meet competitive standards in the areas of maintaining attention for two hour segments; performing at a consistent pace without an unreasonable number and length of rest periods; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; interacting appropriately with the general public; maintaining socially appropriate behavior; and traveling in an unfamiliar place. (Tr. 1865-1866). She likewise concluded Plaintiff's impairments would result in her being absent from any job for more than four days per month. *Id*. Plaintiff argues that Ms. Carter's opinion is a significant corroboration of the agency's reviewing psychologists' opinions that Plaintiff would experience some time off task, lapses in concentration, a need for additional breaks, absences, and a low tolerance for social interactions with supervisors and coworkers.

In response, the Commissioner acknowledges that the ALJ misinterpreted 20 CFR § 416.920b(c). The Commissioner vaguely argues that the ALJ considered all of the evidence, implicitly did not give Ms. Carter's opinion any weight, and thus a remand would be futile. The Court cannot accept this argument. No one knows if the ALJ considered Ms. Carter's opinion, because she didn't provide any analysis. No one knows if the ALJ would have given Ms. Carter's

13

opinion great weight if she had realized that it was not an inherently worthless opinion in the eyes of the agency. Thus, remand is required so that Ms. Carter's opinion can be given the thoughtful analysis which it deserves.

Next, Plaintiff argues that the ALJ erred in failing to provide a minimally logical explanation for dismissing the opinion of the physical consultative examiner, Dr. John Mericle. The Social Security Administration requires that an ALJ articulate "how persuasive we find all of the medical opinions" based upon "factors of supportability and consistency." (*See* 20 C.F.R. § 404.1520(b) and (c). The residual functional capacity analysis "must always consider and address medical source opinions." *See* S.S.R. 96-8p. Where "the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. Further, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, the physician's specialty, and extent of the treatment relationship. 20 C.F.R. § 404.1520(c). Where no mention of the aforementioned factors occurs, remand is necessary. *See Larson v. Astrue*, 615 F.3d 744, 650-651 (7th Cir. 2010). It is well-settled that to enable meaningful review an ALJ must build a logical and accurate bridge between evidence and conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

Plaintiff argues that the primary basis for the ALJ's dismissal of the opinion of the agency's examiner was purely speculative. The ALJ concluded that Dr. Mericle's opinion Plaintiff could walk only one block, could not stand for any prolonged period, could only walk up five to six steps before sitting down, and could only lift a maximum of 10-15 pounds were based purely on "Plaintiff's subjective complaints of shortness of breath with minimal activity." (Tr. 25). Plaintiff points out that her shortness of breath at the examination was not merely subjective but objectively

14

observed by Dr. Mericle on examination in the form of "abnormal breath sounds with prolonged expiration." (Tr. 969). Plaintiff further argues that the evidence does not support the ALJ's assertion that Dr. Mericle simply regurgitated Plaintiff's subjective complaints as opposed to putting her through the testing he was hired to do and which he opined Plaintiff gave "positive" cooperation. (Tr. 971). This Court agrees with Plaintiff on this point and finds that remand is warranted on this issue as well.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: November 22, 2021.

                                                     s/ William C. Lee
                                                     William C. Lee, Judge
                                                     United States District Court